Bobinson, J.,
 

 dissenting. The Legislature, by the enactment of Section 7999, 'General Code, empowered husband and wife to contract with each other with reference to any subject upon which they might contract if unmarried. It at the same time, and in the same act, enacted Section 8000, General Code,
 
 “A
 
 husband and wife cannot by any contract with each other alter their legal relations, except that they may agree to an immediate separation,- and make provisions for the support of either of them and their children during the separation,” thereby prohibiting the alteration of their “legal relations” to each other in every respect except in respect to immediate separation and the support of either and their children during separation. There is no ambiguity in either section, unless it be' found, in the words “legal relations.” *
 

 “Legal relations” manifestly here has reference to the relationship arising out of their marriage. It must, in the composite mind of the Legislature, have included the legal right to cohabit, for it' deemed it necessary to and did except from the prohibition the right to contract that that relationship should cease by the provision “they may agree to an immediate separation. ” • It must, how
 
 *242
 
 ever, have included more than the legal right to cohabit, else why the enactment of the prohibition a,t all? Certainly we cannot attribute to the Legislature an intention to do so purposeless a thing as to enact a law prohibiting the making of certain contracts, and in the same sentence except from the operation thereof the entire subject-matter of the prohibition. But the Legislature did not leave the discovery of the sense in which it used the words “legal relations” to the application of the presumption that it always acts rationally, for by a further exception, joined therewith by the conjunction “and,” it unmistakably declared that by its use of the words “legal relations” it included more than legal cohabitation, for it excepted from the prohibition the right, by contract with each other, to “make provisions for the support of either of them and their children during the separation.” If the words “legal relations,” as used by the Legislature in this section, comprehend the right, conferred by law, of wife or husband and child to support, as they unmistakably do, by what honest logic can it be deduced that the words “legal relations” do not comprehend any and all the other rights to which the marriage contract by law gives rise? And by what logic can it be deduced that the Legislature having prohibited the alteration of such rights by contract, and having excepted from such prohibition two of such rights by name and designation, intended to include as exceptions all other rights arising out of the marriage contract not specifically excepted?
 

 This court in the construction of 'Constitution and statutes has often invoked the doctrine
 
 ex-
 
 
 *243
 

 pressio unius est exclusio alterius.
 
 If applicable anywhere why is it not applicable here? Concededly the Legislature is, and at all times has been, clothed with power to legislate upon the subject. It has legislated, and since then 38 years have intervened, and almost as many sessions of the Legislature have come and gone without the least modification thereof.
 

 The construction of Sections 7999 and 8000 by the courts of the state has thus far been consistent, but now the majority of this court, perchance because it is not in accord with the wisdom of that legislation, has, in violation of its constitutional authority, invaded the legislative domain, and by judicial fiat has repealed the prohibition and amended Section 8000 to read that a husband and wife contemplating separation are permitted “to enter into an engagement mutually .releasing each other’s right to dower and distributive share in the other’s property,” and thereby has imposed upon the state, as statutory law, that which neither the Legislature nor the electorate ever enacted, and has supported that decision, if support it may be called, solely by cases decided before the prohibition of Section 8000 was enacted, and at a time, or times, when no such prohibition existed — decisions that have no more application to the construction of this statute than has the Sermon on the Mount — and this, too, in an equity case, where equity could have required the defendant in error to have cleansed her hands by a refund of the sum received under the prohibited contract, as a prerequisite to the maintenance of her defense.
 

 
 *244
 
 With, the wisdom of the legislation as enacted hy the Legislature, or the wisdom of the legislation as adjudged by this court, the writer of this dissent is not concerned. Indeed, the measure of human happiness or cup of human ill will not be greatly augmented or diminished either by adherence to the authorized legislation by the Legislature or adherence to the unauthorized legislation by this court.
 

 The legislation, as a declaration of a rule defining the rights of married persons, is not of transcendent importance. The airy way in which the defendant in error regards her moral obligation has no appeal to a court of equity. But because this decision can be accounted for upon no other theory than that it assumes the power in this court to annul or modify legislation for the sole reason that it does not approve the policy and wisdom of it, and thereby strikes constitutional government at its root; because of the very boldness of the assault; and because the source of the assault is that branch of the government upon which specially rests the responsibility of preserving the integrity of the Constitution, duty will not permit that it go unchallenged.